IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DIANE KERSTETTER                    :
                                    :
            Plaintiff,              :              4:08-CV-1984
      v.                            :
                                    :              (Judge McClure)
PENNSYLVANIA DEPARTMENT             :
OF CORRECTIONS SCI-COAL             :
TOWNSHIP, JOSEPH PIAZZA,            :
THOMAS SPENCE, NANCY                :
WILSON and DAVE POPEK               :
                                    :
            Defendants.             :

# M E M O R A N D U M

March 12, 2010

## I.  Introduction

On October 31, 2008, plaintiff Diane Kerstetter instituted this civil action,

through counsel,  against defendants Pennsylvania Department of Corrections

SCI-Coal Township (hereinafter "SCI-Coal Township"), Joseph Piazza, Thomas

Spence, Nancy Wilson, and Dave Popek.  In her complaint, Kerstetter filed the

following eight counts: violation of 42 U.S.C. § 1983 (Count I), violation of 42

U.S.C. § 1985 (Count II), retaliation in violation of Title VII of the Civil Rights

Act of 1964 (Count III), gender discrimination in violation of Title VII of the Civil

1

Rights Act of 1964 (Count IV), age discrimination in violation of the ADEA (Count V), intentional infliction of emotional distress (Count VI), civil conspiracy (Count VII), and constructive discharge (Count VIII).

## II. Procedural History

On January 5, 2009, defendants filed a motion to dismiss. (Rec. Doc. No. 12). Defendants requested an extension of time to file their supporting brief; therefore, their supporting brief was timely filed on January 27, 2009. (Rec. Doc. No. 19). Plaintiff filed her opposing brief on February 11, 2009 (Rec. Doc. No. 20), and defendants filed their reply brief on March 2, 2009. (Rec. Doc. No. 21).

On May 5, 2009, this Court granted in part and denied in part the defendants' motion to dismiss. (Rec. Doc. No. 22). We allowed to continue Count I, alleging via 42 U.S.C. § 1983 deprivations of Kerstetter's First and Fourteenth Amendment rights against defendants Piazza, Spence, Wilson, and Popek. We also allowed Count II to continue, which alleges via 42 U.S.C. § 1985 deprivations of the plaintiff's First and Fourteenth Amendment rights against defendants Piazza, Spence, Wilson and Popek. Plaintiff's Count III claims, construed as a Title VII claim against SCI-Coal Township and a PHRA claim against Piazza, Spence, Wilson, and Popek alleging retaliation, were also allowed to continue. In addition, we declared as actionable plaintiff's Count IV claims,

construed as a Title VII claim against SCI-Coal Township and a PHRA claim against Piazza, Spence, Wilson and Popek alleging gender discrimination. Finally, Count V, construed as a a PHRA claim by plaintiff against Piazza, Spence, Wilson and Popek alleging age discrimination was also permitted to continue.

Defendants filed an answer to plaintiff's complaint on June 2, 2009. (Rec. Doc. No. 26).

On October 22, 2009, defendants filed a motion for summary judgment. (Rec. Doc. Nos. 34). Subsequently, this Court granted two motions by defendants seeking extensions of time in which to file a supporting brief and other documents related to the motion for summary judgment. (Rec. Doc. Nos. 37 and 39). Defendants filed a brief in support of their motion for summary judgment and the requisite statement of material facts[1] on November 24, 2009 (Rec. Doc. Nos. 40 and 41).[2] After we granted the plaintiff three extensions of time in which to file a

---

[1] Defendants actually filed an initial statement of material facts on October 22, 2009. (Rec. Doc. No. 35). A revised statement of material facts was filed with this Court on November 24, 2009. (Rec. Doc. No. 41). Plaintiff responded to this revised statement of material facts in her own "Counterstatement of Material Facts," filed on December 16, 2009. (Rec. Doc. No. 52-2). As such, the Court will look to the defendants' revised statement of material facts in its own discussion of the salient facts at issue in this case.

[2] Pursuant to this Court's order dated November 20, 2009, in which we granted defendants' second motion seeking an extension of the time in which to file their brief and other supporting documents, defendants were required to file

responsive brief (Rec. Doc. Nos. 47, 49, and 51), the plaintiff filed her brief in

opposition to the defendants' motion for summary judgment on December 16,

2009 (Rec. Doc. No. 52).[3] This Court granted an unopposed motion by defendants

seeking an extension of time in which to file a responsive brief (Rec. Doc. No.

55), and the defendants filed a reply brief on January 16, 2010 (Rec. Doc. No. 56).

In light of the above, the matter is ripe for disposition. Now, for the

following reasons, we will grant in full the defendants' motion for summary

judgment.

## III.  Factual Background[4]

---

such documents on or before November 23, 2009. (Rec. Doc. No. 39).
Defendants filed their brief and supporting documents one day after the deadline,
on November 24, 2009. In light of this fact, the defendants also filed on that date
a motion for leave to file these documents out of time. (Rec. Doc. No. 42).
Although the motion was not concurred in, this Court granted the motion on
November 30, 2009, deeming the brief and documents submitted in support of the
defendants' motion for summary judgment as timely filed. (Rec. Doc. No. 44).

[3] Included in plaintiff's brief in opposition was plaintiff's own statement of
material facts. Pursuant to Local Rule 56.1, the moving party is required to file a
statement of material facts in support of the motion for summary judgment, and
the non-moving party is required to file a responsive statement of facts. Both
parties are required to "include references to the parts of the record that support
the statements."

[4] Plaintiff objects to defendants' use of unsworn declarations that were not
given under oath. However, 28 U.S.C. § 1746 permits the use of such
declarations, as that provision indicates the following:
    Wherever, under any law of the United States or under any rule,

Taken in the light most favorable to the non-moving party, here plaintiff Kerstetter, the salient facts are as follows. At all times pertinent to the instant motion, Diane Kerstetter was at least 60 years of age. The Department of Corrections ("DOC") is a department within the executive branch of the Commonwealth of Pennsylvania. In this case, plaintiff has named as defendants (1) SCI-Coal Township, a correctional facility operated by the DOC; (2) Joseph Piazza, formerly the superintendent of SCI-Coal township and presently the warden for Luzerne County Prison; (3) Thomas Spence, identified in correspondence as the Director of Human Resources; (4) Nancy Wilson, Accountant at SCI-Coal Township and acting Business Manager since October 2008; and (5) David Popek, formerly the Business Manager for SCI-Coal Township.

SCI-Coal Township hired plaintiff Diane Kerstetter as a Clerk Typist I in

_____

regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . , such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .

28 U.S.C. § 1746. The declarations utilized by the defendants substantially follow the form provided in § 1746. As such, we find no basis for plaintiff's objecting to the defendants' use of these unsworn declarations.

January of 1994.  Kerstetter was then transferred to the Business Office in August of 1994.  A few months later, in October of 1994, Kerstetter was promoted to Clerk Typist II.  Less than two years later, on August 25, 1996, Kerstetter applied for, and was appointed to, the position of Accounting Assistant.

In 2003, Kersttetter was called to testify concerning an investigation related to at least two employees at SCI-Township: William Voeckler, the Business Manager for SCI-Coal Township, and Nancy Wilson, a Clerk Typist II at the time.  During the course of this investigation, Kerstetter and Lisa Howerter, among others, were interviewed.  Kerstetter and Howerter no longer work in the Business Office.  Judy Kleha Stansfield ("Kleha"), who still works in the Business Office, did not testify as part of the investigation.

After the investigation, Voeckler remained Business Manager at SCI-Coal Township and Wilson was transferred to medical records.  Apparently, Voeckler and Wilson were not to socialize and, when the two were found together.  Voeckler was asked to, and did, resign from his position.

Wilson claims that the details of the investigation were never disclosed to her and that she did not know whom the investigators interviewed until after Kerstetter filed the instant lawsuit.  On the other hand, plaintiff claims that "[t]he interviews were conducted at the institution right under the nose of Nancy

Wilson." (Rec. Doc. No. 52-2 at 4). Plaintiff also claims that, at a time when Wilson was Accountant at SCI-Coal Township and Kerstetter's supervisor, Wilson told her on two or three occasions that Wilson knew who testified.[5] During one of these occasions, plaintiff claims that Wilson told another employee, Jane Hinman, that "one there in the front office should be fired." Id. Plaintiff claims that she felt threatened, intimidated, and retaliated against for testifying during the investigation.

Defendants contend that Kerstetter and Kleha were constantly at odds with each other. On the other hand, plaintiff contends that Kleha was the source of the conflict and that Kleha was moved to the plaintiff's department because Kleha could not get along with her old co-workers. Plaintiff points to an evaluation in 2006 in which Kleha received a lower evaluation than Kerstetter, an inappropriate posting made by Kleha in the Business Office, and the plaintiff's own verbal and written complaints concerning Kleha.

On August 7, 2006, defendants assert that Piazza transferred Kerstetter temporarily to the mailroom. It is the defendants' position that this decision was

---

[5] Wilson became Accountant at SCI-Coal Township in February of 2005. In this role, Wilson supervised Kerstetter, Howerter, and Kleha.

made by Piazaa, not Wilson or Popek,[6] and that the transfer was to last for only three to six months.

Plaintiff disagrees that the move was clearly temporary. As support for this contention, plaintiff points to the fact that she was called to the office of Rosemary Pawelczyk, located in the Budget Analyst's Office, when plaintiff was informed that she would be moved to the mailroom and that Wilson was present for the meeting. In addition, plaintiff notes that an email sent from Pawelczyk to Theresa Jellen, the mailroom supervisor, states that "whether Ms. Kerstetter's move is temporary or permanent has not yet been determined by the superintendent." (Rec. Doc. No. Exhbt. W). Plaintiff claims that she was never told the move would be temporary. Plaintiff asserts that, on August 4, 2006, she emailed Wilson to inform Wilson that Kleha was not "being a team player" and that plaintiff would discuss the issue with Popek, and possibly the Superintendent, if the matter was not resolved. (Rec. Doc. No. 52-2 at 8). Kerstetter was subsequently moved to the mailroom on August 7, 2006. Plaintiff also asserts that Spence did not concur with the move and that Kleha was never moved.

Defendants claim that Piazza's decision to transfer Kerstetter to the mailroom was made to temporarily resolve the fighting between Kerstetter and

---

[6] In fact, defendants contend, and plaintiff agrees, that Popek was actually on vacation at the time.

Kleha. In addition, defendants note that Kleha was not moved because, as she was a pay grade three, she would have been entitled to out-of-class pay if moved. Plaintiff claims that, when she asked Piazza for the reason behind her move, he said that it was because of a "hostile work environment." Id. at 9. Plaintiff also claims that the out-of-class pay reason for moving her was given only after she pressed the defendants to support their reasons for the move; plaintiff notes that Wilson and Kelly Park were recently paid out-of-class pay in their roles as acting Business Manager and Accountant. Plaintiff also contends that others were available to do the work in the mailroom and that these individuals would have been a better fit, especially in light of lift restrictions placed upon Kerstetter because of back problems.

Defendants purport that Kerstetter's transfer was not disciplinary in nature and that it did not affect her pay grade or benefits. However, Plaintiff claims that the move was a disciplinary action and that she felt punished. Plaintiff contends that she felt the move to the mailroom was a step down, with different duties and a dirtier work environment. Also, Kerstetter contends she no longer had her own cubicle, as she did in the Business Office. Plaintiff also claims that, even though she should have had a new supervisor, Theresa Jellen, Wilson continued to be her supervisor in the mailroom for a few months after the move. Plaintiff claims that

the move affected her health and caused her to go on sick leave, as recommended by her doctor.

After the move to the mailroom, other points of disagreement between Kerstetter and the defendants arose. Defendants claim that, after Kerstetter was moved to the mailroom, Wilson asked her to box up items at her desk in the Business Office. Wilson stated that she was concerned other co-workers might take and use the items, as the items were in a common area. Eventually, Wilson placed the items in a box herself. Plaintiff denies that Wilson ever asked her to box up these items. Instead, plaintiff asserts that, when she learned that Wilson had boxed up the items, plaintiff had a meeting with Popek, at which time she indicated that, if asked, she would have boxed the items up herself. Plaintiff notes that these items were not in a common area; instead, the items were at her desk, which was in her own cubicle. Plaintiff admits, however, that Wilson did box up the items while plaintiff was on sick leave.

Another source of conflict was Kerstetter's lamp, which Wilson noticed was missing from Kerstetter's desk in the Business Office after Kerstetter's move to the mailroom. Wilson asked Kerstetter about the lamp. Plaintiff claims that Jellen took the lamp and gave it to Kerstetter. After Wilson asked her about the lamp, a meeting was scheduled with Wilson, Jellen, Popek, a Connie Dunleavy, and

Kerstetter. Plaintiff was not disciplined over the matter, but says that the "entire incident was to simply continue to harass Plaintiff." (Rec. Doc. No. 52-2 at 13).

In January of 2007, Kerstetter was transferred back to the Business Office. Plaintiff claims that this transfer was made because of her work with her union and the complaints she lodged with the Superintendent and Chieke.

Defendants state that, when Kerstetter was moved back to the Business Office, she returned to a cubicle, while before the move she worked in an open area. Wilson claims this change was made because Kleha needed to be in an open area and because she was hoping to reduce conflict between Kleha and Kerstetter. Plaintiff counters that her old desk, which allegedly remained empty upon her return, was in a large cubicle area, while her new work area was located in a small cubicle in a row of desks for clerk typists. Plaintiff also claims that her old desk is now being used by her replacement, Kelly Park, who was 44 years of age at the time. Defendants claim that an open area was better for Kleha because, as part of her job, she was required to use a cable computer and three filing cabinets. Plaintiff counters by noting that all employees utilized the three cabinets and that Kleha did not perform any cable duties before Kerstetter was transferred to the mailroom, and the only reason Kleha was performing cable duties was to cover some of Kerstetter's duties while Kerstetter was in the mailroom.

Upon Kerstetter's move to the mailroom, Kleha and Howerter asked Wilson if their lunch times could be changed. Wilson agreed. Defendants assert that, as a result, upon Kerstetter's return to the Business Office, she was given a different lunch hour, for coverage purposes, than she had previously. Plaintiff asserts that her lunch time was changed to prevent her from being able to have lunch with her friends. She also denies that the lunch time change was made for coverage purposes because an employee was always there to answer the phone.

Defendants admit that Kerstetter's duties changed upon her return to the Business Office. Defendants point to the reason for this change as being the fact that, while Kerstetter was in the mailroom, Kleha was trained to do a number of Kerstetter's tasks. Defendants claim that, upon her return, Kerstetter was not asked to do anything that was not in her job description. Plaintiff also contends that, upon her return to the Business Office, she was in fact charged with additional responsibilities not in her job description, such as IGWF Payable, Jpay, and Venda cards.

In her 2001-2002 performance review, Kerstetter received an overall rating of commendable in a review prepared by a Michael Brown. The review noted that the plaintiff "needs to work on her ability to interact with her co-worker." It was also recommended that Kerstetter take required training as well as stress

management and conflict resolution. Upon his review, Voeckler stated that Kerstetter "needs to put more effort into working in harmony with her co-workers." Plaintiff claims she was not the one causing or creating the conflicts and also claims that it was common practice for such training to be recommended in an evaluation. She also claims that, after she refused to sign the evaluation, she submitted comments. Plaintiff notes that Kleha received a lower evaluation than plaintiff for the 2001-2002 evaluation period.

Kerstetter's 2002-2003 evaluation, also prepared by Michael Brown, and her 2003-2004 evaluation, prepared by a Joseph A. Broscious, contained similar recommendations pertaining to training and Kerstetter's interpersonal relations with her co-workers. For both time periods her evaluation was commendable.

Kerstetter received an overall rating of satisfactory in her 2005-2006 performance review, which was prepared by Nancy Wilson. Wilson reiterated the recommendations that Kerstetter take training classes and that Kerstetter needed to become a team player. Although Wilson stated that Kerstetter had shown improvement, Kerstetter received a rating of only satisfactory.

Kerstetter resigned in May of 2007. Defendants claim that Kerstetter did not discuss with anyone, prior to her resignation, her intent to resign or alternatives to resignation that may have existed. Plaintiff disputes this

contention.  First, plaintiff contends that she had been on the civil service list for a fiscal technician position in 2005 until it expired.  Second, she also states that she was on the civil service list when she learned that Wilson would be her supervisor.  Third, plaintiff asserts that she had informed Superintendent Piazza in early 2007 that she was on the list and would appreciate an opportunity at the Vocational Assistant position for which she had previously applied.  Fourth, plaintiff claims that she spoke to Popek about taking a voluntary demotion in a clerical position so as to move out of the Business Office.  At the time of her resignation, plaintiff claims that Spence made no suggestions as to alternative positions that might have been available to her.

Defendants posit that plaintiff did not file a complaint with the Equal Employment Opportunity Office ("EEOO"), and note that the DOC has a formal procedure for making complaints concerning discrimination or retaliation through the EEOO.  Plaintiff claims she made complaints in 1997 and 2004, wrote to Business Manager Popek, wrote to Piazza, and complained to Rapheal Chieke.  Plaintiff also states that she has filed complaints with the Pennsylvania Human Relations Commisssion ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").  Plaintiff also states that she verbally complained to Spence and others.

Defendants state that Kerstetter was replaced by Kelly Park on July 15, 2007.  Defendants assert that Park was one of four interviewees for the position and the only one with accounting experience.  According to plaintiff, Park had no accounting experience, but only experience in the Accounting Department.  Plaintiff claims that one of the other applicants, Peggy Ferentz, who plaintiff asserts is in her fifties, had actual accounting experience.

## IV.  Standard of Review

Summary judgment is appropriate when 1) there are no material facts in dispute; and 2) one party is entitled to judgment as a matter of law.  Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56(c)).

A district court may properly grant a motion for summary judgment "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit.  Id, Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that a issue of material fact remains. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements;

rather the party must point to specific evidence in the record that creates a genuine

issue as to a material fact. <u>Celotex</u>, 477 U.S. at 32; <u>Ridgewood Bd. of Educ. v.</u>

<u>N.E. ex rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999)

## V. Discussion

### 1.  Plaintiff's Claim That Defendants Retaliated Against Her in Violation of the First Amendment, Title VII, and the PHRA[7] (Counts I and III)

We will address at the outset the plaintiff's claim that the defendants

violated the First Amendment by retaliating against her for participating in an

internal investigation pursuant to her duties as an employee as well as for other

activities in which she was engaged.  After this discussion, we will address

plaintiffs' claims that the defendants improperly retaliated against her under Title

VII and the PHRA.

### A.  Plaintiff's First Amendment Retaliation Claim

First, Kerstetter claims that the defendants violated her First Amendment

rights.  For a plaintiff to state a claim of retaliation for the exercise of his or her

First Amendment rights, a plaintiff must meet a two-part test.  First, a plaintiff

---

[7] As defendants note, "[c]laims under the PHRA are interpreted coextensively with Title VII claims." <u>Atkinson v. Lafayette College</u>, 460 F.3d 447, 454 n. 6 (3d Cir. 2006) (citing <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 105 (3d Cir. 1996)).

must allege that the First Amendment protects the activity at issue. See Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (citing Phyllis Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)). Second, a plaintiff must allege "that the protected activity was a substantial factor in the alleged retaliatory action." Id.

To determine whether an activity is protected under the First Amendment, the activity must meet a three-part test. First, in making the statement, the public employee must speak as a citizen. Id. Second, the statement must relate to a matter of public concern. Id. Third, the employer, a government entity, must not have had "an adequate justification for treating the employee differently from any other member of the general public" because of the statement made. Id. at 241-42 (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

To the extent that the plaintiff's First Amendment retaliation claim is based upon her participation in the internal investigation, we must conclude that this speech was not protected and, therefore, that a First Amendment claim based upon such speech is not actionable. As the United States Supreme Court has noted, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." Garcetti, 126 S. Ct. at 1960. Here, plaintiff has admitted that she was acting

"pursuant to [her] official duties" when she took part in the interview.  See Ptf.

Dep., Rec. Doc. No. 40-3 at 26 (in which plaintiff stated that "it was like we had

no choice" as to testifying in the investigation and that she "didn't even like the

idea of having to be called in . . . .").  As such, pursuant to Garcetti, Kerstetter

could not have been speaking as a citizen under the First Amendment when she

was participating in the investigation and, therefore, this activity could not have

been protected.

Plaintiff has attempted to point to other conduct, beyond her participation in

this internal investigation, for which she was retaliated against.  These examples

included subsequent verbal and written complaints that Kerstetter allegedly made

to various officials and supervisors.  Defendants claim that plaintiff, by arguing in

her brief that these additional activities are protected, has improperly amended her

complaint which, defendants contest, only pertained to her being retaliated against

for testifying during the internal investigation.

We need not reach defendants' argument, however, because these additional

examples, even if properly alleged, are not protected under the First Amendment.

Simply put, the statements that plaintiff allegedly made do not relate to a matter of

public concern, the second requirement in the three-part test for determining

whether speech made by a public employee is protected under the First

Amendment. Speech made by a public employee "involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003) (quoting Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001)). Here, plaintiff's speech did not concern a "matter of political, social or other concern to the community"; instead, her complaints were centered around personal disagreements she had with her co-workers, how particular events transpired and their importance, and her own opinion about her ability to work with others. As the Third Circuit Court of Appeals noted in the context of an ADEA claim, "[w]e do not sit as a super-personnel department that reexamines an entity's business decisions." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. Pa. 1995) (quoting McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992)). The issue here is whether Kerstetter's speech concerned a "matter of political, social or other concern to the community." Her speech did not, and she is therefore not entitled to relief under the First Amendment for retaliation.

In light of the above, we will grant the defendants' motion for summary judgment as to the plaintiff's First Amendment claim of retaliation.

## B.  Plaintiff's Retaliation Claims under Title VII and the PHRA

Second, Kerstetter claims that defendants retaliated against her in violation of Title VII of the Civil Rights Act of 1964 and the PHRA.  To establish a prima facie case in such a retaliation action, the plaintiff must show the following:

(1) the employee engaged in a protected employee activity;
(2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and
(3) a causal link exists between the employee's protected activity and the employer's adverse action.

Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).  See also Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006); Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1988).

Upon the plaintiff's making out a prima facie case of discrimination, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"  Id. (citing McDonnell Douglas Corp., 411 U.S. 792, 802 (1973)).  In fact, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (U.S. 1981) (citing Board of Trustees v. Sweeney, 439 U.S. 24, 25 (U.S. 1978)).  To create a genuine issue of material fact regarding

whether it discriminated against a plaintiff, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Burdine, 450 U.S. at 255. The Third Circuit has referred to this burden as being a light one. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

After a defendant articulates a legitimate, nondiscriminatory basis for its discharge of its employee, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are not true but instead act as mere pretext for the discrimination. Jones, 198 F.3d at 410 (citations omitted). To achieve this, the plaintiff must proffer evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 763.

Here, plaintiff argues that, by complaining to her supervisors and by making complaints to Chieke, she engaged in protected activity. Plaintiff also argues that she was engaged in protected activity when she participated in the investigation of Wilson and Voeckler and engaged in EEO activity. Defendants contend that, because plaintiff provided information as part of an investigation that was not outside her role as an employee at SCI-Coal Township, such conduct is not

considered protected under either Title VII or the PHRA. Defendants also claim that the other conduct asserted by plaintiff to have been protected, in which she complained to various officials and supervisors, even if properly raised, cannot be deemed to be protected activity.

In her brief, plaintiff does not appear to distinguish between the two types of activities that are considered protected under the anti-retaliation provision of Title VII. That provision declares that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this title, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). The first clause of the anti-retaliation provision is known as the opposition clause, while the second clause is known as the participation clause.

### i. Plaintiff's Actions as part of SCI-Coal Township's Internal Investigation

In Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846, 853 (2009), the United States Supreme Court further elaborated on that conduct considered to be protected under the opposition clause of Title VII's anti-retaliation provision. The issue in Crawford was whether protection from employer retaliation against an employee who reports race or gender

23

discrimination in the workplace "extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation." Id. at 849. The employer in Crawford initiated an investigation to determine whether rumors that the school district's employee relations director, Gene Hughes, had engaged in sexual harassment. Id. As part of that investigation, the plaintiff, Vicky Crawford, was asked "whether she had witnessed 'inappropriate behavior' on the part of Hughes." Id. (quoting Crawford v. Metro. Gov't of Nashville & Davidson County, 211 Fed. Appx. 373, 374-75 (6th Cir. 2006)). In response, Crawford related a number of examples of sexually harassing behavior by Hughes. Soon after the conclusion of the investigation, Crawford was fired, though no action was taken against Hughes. Id. It was Crawford's contention that she was fired because of a charge that she had filed with the Equal Employment Opportunity Commission ("EEOC"), as well as because of her reporting of Hughes' behavior during the employer's internal investigation. Id.

The District Court in the case granted the defendant summary judgment, concluding that Crawford's conduct did not fall within the purview of "the opposition clause because she had not 'instigated or initiated any complaint,' but had 'merely answered questions by investigators in an already-pending internal

investigation, initiated by someone else.'" Id. at 850 (quoting Crawford v. Metropolitan Government of Nashville/Davidson County, 2005 WL 6011557, *2 (M.D. Tenn., Jan. 6, 2005)).  The Sixth Circuit Court of Appeals affirmed, "holding that the opposition clause 'demands active, consistent opposing' activities to warrant . . . protection,'" but that "Crawford did 'not claim to have instigated or initiated any complaint prior to her participation in the investigation, nor did she take any further action following the investigation and prior to her firing.'" Id. (quoting Crawford v. Metropolitan Government of Nashville and Davidson County, 211 Fed.Appx. 373, 376 (6th Cir. 2006)).

In its opinion, the Supreme Court focused on the latter claim by Crawford, namely, that she was fired simply for relating, during the investigational interview, the behavior engaged in by Hughes.[8]  The Court concluded that the statement made by Crawford to the investigating officer was "covered by the opposition clause, as an ostensibly disapproving account of sexually obnoxious behavior toward her by a fellow employee, an answer she says antagonized her employer to the point of sacking her on a false pretense."  Id. at 850-51.  As the Court noted, "'[o]ppose' goes beyond 'active, consistent' behavior in ordinary discourse, where

---

[8] The Court did "not reach [Crawford's] argument that the Sixth Circuit misread the participation as well," in light of the Court's conclusion that Crawford's conduct as part of the internal investigation did constitute opposition under the opposition clause.

we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it." Id. at 851. Therefore, someone could "'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question." Id.

Although neither party has cited to Crawford in briefing before this Court, we feel the need to discuss whether Crawford applies, as the facts in both Crawford and the instant case are somewhat similar. However, one important difference is dispositive of the question as to whether Kerstetter engaged in conduct falling under the opposition clause of Title VII's anti-retaliation provision. In the instant case, the record reflects that the investigation at issue focused on two allegations that were not previously investigated: a claim that the deputy for facilities management at SCI-Coal Township had engaged in sexual harassment (Rec. Doc. No. 40-7 at 20), and a claim that Mr. Voelker and Ms. Wilson had been caught by Superintendent Gillis engaged in a compromising situation in Mr. Voelker office and that Ms. Wilson had received favorable treatment not offered to other employees.

There is no indication that Kerstetter, during the internal investigation interview, provided any statements relating to the claims against the deputy for facilities management. In addition, all facts support the conclusion that the scope of Kerstetter's testimony concerned only the alleged relationship and conduct between Mr. Voelker and Ms. Wilson. In fact, by Kerstetter's own testimony during her deposition, Kerstetter believed that Ms. Wilson eventually retaliated against Kerstetter because of Kerstetter's testimony as it related to the conduct of Mr. Voelker and Ms. Wilson. See Ptf. Dep. at 33-35.

Plaintiff has neither alleged nor put forth any evidence that would support an allegation that she was retaliated against for testifying about sexual harassment by the deputy for facilities management or that the investigation into Mr. Voelker and Ms. Wilson concerned sexual harassment or sexual discrimination. If plaintiff had, the answer to the question whether Kerstetter engaged in opposition activity under Title VII might be a different one. After all, and unlike the defendants' contention that Kerstetter's conduct could not be considered protected because it was made pursuant to her duties as an employee, a plaintiff like Kerstetter, in light of Crawford, may "'oppose' by responding to someone else's question just as surely as by provoking the discussion . . . ." Crawford, 129 S.Ct. at 851.

Therefore, it would appear that under the <u>Crawford</u> construct, Kerstetter may have engaged in opposition activity, but the key question concerns *what* in fact she was opposing. Here, we are constrained to conclude that she was not in fact opposing "any practice made an unlawful employment practice *by this title*." 42 U.S.C. § 2000e-3(a) (emphasis added). An employee is engaged in conduct that is clearly protected when the employee, in good faith, believes that the actions being protested against are discriminatory. See <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir. 1996). The question, then, is whether a reasonable person could have believed that the actions being complained against were violative of Title VII. <u>See</u> <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 271 (2001). Here, Kerstetter could not have reasonably believed that the actions she was complaining against were discriminatory or violative of Title VII; instead, her opposition pertained to the apparently consensual relationship between Mr. Voeckler and Ms. Wilson. While the relationship may be have been improper based upon company policy, it was not violative of Title VII. As such, we conclude that Kerstetter was not engaged in opposition activity protected under the anti-retaliation clause of Title VII when she testified during the internal investigation as to the alleged relationship between Ms. Wilson and Mr. Voeckler.

We must conclude that, for the same reason, Kerstetter's conduct during the investigation could not be construed as falling within the participation clause of Title VII. As the Third Circuit has noted, "[w]hether the employee opposes, *or participates* in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (citing Clark County, 532 U.S. at 271; Aman, 85 F.3d at 1085) (emphasis added). Therefore, we conclude that Kerstetter's conduct as part of her employer's internal investigation does not fall within the ambit of Title VII's participation clause and, as such, is not protected activity.

### ii. Additional Actions Allegedly Undertaken by Plaintiff

Plaintiff points to conduct beyond that undertaken as part of the employer's internal investigation that, she claims, constitutes protected activity under Title VII. In support, plaintiff claims that she complained to both Superintendent Piazza and Mr. Popek, filed a grievance with her union, and notified Mr. Chieke, of the DOC's EEOO.

Defendants contend that these additional claims of protected activity for which the plaintiff was retaliated against constitute an improper broadening of the allegations contained in her complaint. In addition, defendants argue that, in any

case, these additional examples of activity on the part of plaintiff do not constitute protected conduct under Title VII.

According to the Third Circuit, it is "established that opposition to an illegal employment practice must identify the employer and the practice - if not specifically, at least by context." <u>Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.</u>, 450 F.3d 130, 135 (3d Cir. 2006). As such, "[a] general complaint of unfair treatment is insufficient to establish protected activity under Title VII." <u>Id.</u> (citing <u>Barber v. CSX Distrib. Servs.</u>, 68 F.3d 694, 702 (3d Cir. 1995) (noting that the letter at issue "does not explicitly or implicitly allege that age was the reason for the alleged unfairness" and that "[a] general complaint of unfair treatment does not translate into a charge of illegal age discrimination")).

While we disagree with the defendants that plaintiff's attempt to point to other examples of activity is an improper broadening of the allegations found in her complaint, we do agree that, even considering these additional examples, plaintiff has failed to show that she has engaged in protected activity. First, there is no evidence that, in the plaintiff's discussion with Superintendent Piazza, the plaintiff implicitly or explicitly alleged that she was being improperly discriminated against.

Second, plaintiff's letter to Mr. Popek dated February 9, 2005, is similarly unavailing as a form of protected activity. In this letter, Kerstetter indicates that her concern is her "being interviewed in the fact finding of Bill Voeckler and Nancy Wilson" and "retaliation, unfair treatment, a hostile work environment and preferential treatment . . . ." Ptf. Exhbt. N. As we have stated above, Kerstetter's testimony during the investigation did not concern or oppose an activity unlawful under Title VII. In addition, Kerstetter's concern about "retaliation, unfair treatment, a hostile work environment and preferential treatment" under her newly-appointed supervisor Ms. Wilson appears to be forward-looking; she does not point to areas of complaint, but instead appears to be concerned about potential future instances of "retaliation, unfair treatment, a hostile work environment and preferential treatment . . . ." In addition, even if some of Kerstetter's complaints in fact concerned past occurrences, the February 9, 2005 letter is more of the "general complaint of unfair treatment" variety that is insufficient in establishing that Kerstetter engaged in a protected activity.

Third, as another example of a protected activity, plaintiff points to her complaints to Mr. Chieke, of the EEOO, concerning her move to the mailroom. The Court has been provided no evidence of these complaints other than plaintiff's

testimony in her deposition and affidavit.  There is also no evidence that these complaints explicitly or implicitly allege retaliation or any other form of discrimination unlawful under Title VII.

Fourth, and finally, plaintiff points to her grievance, in which she claims that she "was moved due to a hostile work environment," she felt "hostility," she received "unfair treatment" which placed her "in a very embarrassing situation" which was "handled in a demeaning manner."  Ptf. Exbht. AA.  Plaintiff also claimed to "have been discriminated and harassed by my supervisor, Nancy Wilson," who she claims did not follow institutional protocol, presumably in her transfer to the mailroom.  Id.  However, once again, these complaints neither explicitly nor implicitly allege retaliation or any other form of discrimination - such as gender or age - unlawful under Title VII.  These complaints just as easily could have arisen from personal disagreements between Kerstetter and Wilson totally devoid of unlawful discriminatory animus, lending further support to our conclusion that such a grievance is a "general complaint of unfair treatment" and not a form of protected activity.

In light of the above, we conclude that none of these additional examples pointed to by plaintiff constitutes protected activity.  As such, we will grant the defendants' motion for summary judgment as to the plaintiff's retaliation claims

under Title VII and the PHRA.

## **2.  Plaintiff's Claim That Defendants Acted in Concert to Deprive Her of Equal Protection of the Laws in Violation of 42 U.S.C. § 1985(3) (Count II)**

An individual injured by a conspiracy may bring an action under 42 U.S.C.

§ 1985(3) if the conspiracy was created "for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the

laws, or of equal privileges and immunities under the laws."  To make out a proper

claim under § 1985(3), a plaintiff must establish:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal protection of
> the laws, or of equal privileges and immunities under the laws; and
> (3) an act in furtherance of the conspiracy; (4) whereby a person is
> injured in his person or property or deprived of any right or privilege
> of a citizen of the United States.

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting United Bhd.

of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983)).  The second

element, as outlined above, requires that a claimant "allege 'some racial, or

perhaps otherwise class-based, invidiously discriminatory animus behind the

conspirators' action' in order to state a claim."  Id. at 135 (quoting Griffin v.

Breckenridge, 403 U.S. 88, 102 (1971)).  While the United States Supreme Court

has specifically declined to address whether gender is a protected class under §

1985(3), <u>see</u> <u>Bray v. Alexandria Women's Health Clinic</u>, 113 S. Ct. 753, 759

(1993), other courts have concluded that § 1985(3) does in fact encompass gender

as a protected class.  <u>See</u>  <u>Hartshorn v. Throop Borough</u>, 2009 U.S. Dist. LEXIS

27528, *25 (M.D. Pa. Apr. 2, 2009) (Caputo, J.) (noting that the plaintiff was "a

member of the female gender, a class of persons clearly constituting a protected

class under § 1985(3)) (citing <u>Novotny v. Great Am. Fed. Sav. & Loan Ass'n</u>, 584

F.2d 1235, 1243 (3d Cir. 1978), *vacated on other grounds*, 442 U.S. 366 (1979)).

In the instant case, plaintiff appears to have grounded her § 1985 action on

gender discrimination.  While we agree that the plaintiff is part of a protected

class, we fail to see how the plaintiff has put forth any evidence supporting the

first element of a § 1985(3) claim: that there existed "a conspiracy," the purpose of

which was to deprive the plaintiff "of the equal protection of the laws, or of equal

privileges and immunities under the laws."  <u>Farber</u>, 440 F.3d at 134.  As the Third

Circuit has concluded, for there to be a conspiracy, "there must be a 'meeting of

the minds.'"  <u>Startzell v. City of Philadelphia</u>, 533 F.3d 183, 205 (3d Cir. 2008)

(quoting <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158 (1970)).  Here, there is

no evidence of such a conspiracy or "meeting of the minds."  <u>Id.</u>  In her brief,

plaintiff claims that she "has clearly established the content of the conspiratorial

acts including dates, place and persons who were involved."  (Rec. Doc. No. 52 at

30).  However, there is no evidence to support the conclusion that there was a "meeting of the minds" between Wilson, Piazza, Spence, and Popek; plaintiff's conclusory allegations as to a conspiracy between the defendants, with no factual support, are insufficient at this stage of the proceedings.

As we conclude that plaintiff's § 1985(3) claim must fail, we will grant summary judgment as to the defendants on this claim.

### 3.  Plaintiff's Claim That Defendants Discriminated Against Her Because of Her Gender in Violation of the Fourteenth Amendment, Title VII, and the PHRA (Counts I and IV)

It appears as though plaintiff contends that her Fourteenth Amendment rights were violated when she was treated differently from her male colleagues at SCI-Coal Township.  In order to make out a claim for denial of equal protection under 42 U.S.C. § 1983, a plaintiff must prove purposeful discrimination. Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing Batson v. Kentucky, 476 U.S. 79, 93 (1986)).  To prove this type of sex discrimination, a plaintiff must show disparate treatment occurred based upon her gender.  See id.

In order to make this showing, a plaintiff may use direct or circumstantial evidence.  Direct evidence is evidence that reveals "a sufficient discriminatory animus making it unnecessary to rely on any presumption from the prima facie case to shift the burden of production."  Anderson v. CONRAIL, 297 F.3d 242,

248 (3d Cir. 2002) (citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)).  In

this case, plaintiff has pointed to no direct evidence that would be admissible at

trial.  Therefore, we must decide whether plaintiff can establish that the defendants

discriminated against her based upon circumstantial evidence pursuant to the

McDonnell Douglas burden-shifting framework, discussed supra, section 1(B).

To make out a prima facie case under McDonnell Douglas of, in this case,

gender discrimination, a plaintiff must show:

> (1) she is a member of a protected class; (2) she satisfactorily
> performed the duties required by her position; (3) she suffered an
> adverse employment action; and (4) either similarly-situated
> non-members of the protected class were treated more favorably or
> the adverse job action occurred under circumstances that give rise to
> an inference of discrimination.

Langley v. Merck & Co., 186 Fed. Appx. 258, 259 (3d Cir. 2006) (citing Sarullo v.

U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); McDonnell Douglas, 411

U.S. at 802.  In the context of describing the meaning of "adverse employment

action," the Third Circuit has noted "that '[r]etaliatory conduct other than

discharge or refusal to rehire is thus proscribed by Title VII only if it alters the

employee's compensation terms, conditions, or privileges of employment,

deprives him or her of 'employment opportunities, or adversely affect[s] his [or

her] status as an employee.'"  Weiler v. R & T Mech., Inc., 2006 U.S. Dist. LEXIS

80981, *16 (M.D. Pa. Oct. 25, 2006) (quoting Robinson v. City of Pittsburgh, 120

F.3d 1286, 1300 (3d Cir. 1997) (internal quotations omitted)).

Here, defendants argue that plaintiff cannot establish a prima facie case of sex discrimination, and we agree. It appears undisputed that plaintiff falls within a protected class and performed satisfactorily, and we also conclude that there remains a genuine issue of material fact as to whether she suffered from an "adverse employment action." However, we agree with defendants that the plaintiff has failed to point to any evidence showing that non-members of the protected class, similarly-situated, were in fact treated more favorably. While she claims that her complaints of discrimination and a hostile work environment were ignored, she does not point to how men were treated more favorably. Instead, she simply claims that four men to whom she complained did nothing. As such, we cannot conclude that non-members of the protected class, similarly-situated, were in fact treated more favorably. In addition, plaintiff does not allege that her transfer to the mailroom or back to the Business Office, or the alteration in her duties, though neither her pay nor her title were changed, were based on sex discrimination or that the four men approved of or ratified discrimination based upon sex. We therefore conclude that summary judgment in favor of defendants as to plaintiff's gender discrimination claims is appropriate.

## **4. Plaintiff's Claim That Defendants Discriminated Against Her Because of Her Age in Violation of the PHRA (Count V)**

Defendants claim that, construing the plaintiff's age discrimination count as alleging a claim of hostile work environment and constructive discharge, such a claim must fail. Plaintiff disagrees, contending that she can show that she was discriminated against because of her age.

In deciding whether a work environment is hostile within the context of Title VII, a court is to look at all of the circumstances, which includes "the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)). Therefore, in this context, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788 (internal quotations and citations omitted). As the Supreme Court noted, these requirements under Title VII for determining whether a hostile work environment exists assure that the statute "does not become a 'general civility code.'" Id. (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998)).

We agree with defendants that, assuming arguendo that the plaintiff's claims are not barred for failure to avail herself of employer-provided remedies,[9] the plaintiff has failed to point to evidence sufficient to support a claim of hostile work environment. Quite simply, those aspects of the work environment at SCI-Coal Township about which the plaintiff complains do not rise to a level of a hostile work environment. Kerstetter complains of Wilson's requirement that Kerstetter go to Wilson prior to putting in for leave in SCI-Coal Township's computerized leave system, also known as Employee Service System ("ESS"), or before talking to Mr. Popek, the fact that Wilson confronted her about the disappearance of a lamp, the boxing up of her materials at her old desk, the alteration of her duties as an Accounting Assistant, having her lunch hour changed, or being moved to and from the mailroom. These instances could not be described as amounting "to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788. In addition, beyond her replacement being younger than she was, Kerstetter has not pointed to any evidence that her age played any role in these occurrences. As such, we conclude that summary judgment in favor of the defendants is proper as to this claim.

---

[9] In light of our conclusion that defendants are entitled to summary judgment as to the plaintiff's hostile work environment claim, we need not decide whether such a claim is barred because of plaintiff's failure to avail herself of remedies provided by her employer.

Plaintiff also appears to put forth a claim based upon constructive discharge because of her age. The objective question that must be answered in the context of a constructive discharge claim is "whether a reasonable jury could conclude that [a defendant] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998) (citing Spangle v. Valley Forge Sewer Auth., 839 F.2d 171, 173 (3d Cir. 1988)). The conditions, therefore, must have been "intolerable," based upon an objective test. Spangle, 839 F.2d at 173. As noted by the Third Circuit in Connors:

> 'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign. 'Rather, intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign,'--that is, whether he would have had no choice but to resign.

Connors, 160 F.3d at 976 (quoting Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1996) (citations omitted)).

In the present case, we do not believe that the circumstances surrounding Kerstetter's employment at SCI-Coal Township were objectively intolerable. We do not, therefore, believe that a reasonable person in the position of Kerstetter

would have felt compelled to resign. The fact that Wilson required Kerstetter, as well as the other employees under Wilson, to put in for leave in ESS cannot support Kerstetter's claim of constructive discharge. The confrontation over the disappearance of the lamp or the boxing up of the materials, when Kerstetter had been transferred from one office to another, is similarly unavailing. While Kerstetter was transferred from the Business Office to the mailroom involuntarily, she only worked in the mailroom for approximately six months before she was transferred back to the Business Office. It is true that, upon her return to the Business Office, Kerstetter was located in another area of the office, her duties as an Accounting Assistant were altered, and she received a different lunch break. However, neither Kerstetter's pay nor her benefits were altered at any time, and she does not claim to have been threatened with being fired or asked to resign or retire. Looking at all of the circumstances, we fail to see how Kerstetter's working conditions were objectively "intolerable," Spangle, 839 F.2d at 173, and such that a reasonable person in her position "would have felt compelled to resign." Connors, 160 F.3d at 974.

In light of the above, we conclude that summary judgment in favor of the defendants is proper as to plaintiff's claim that she was constructively discharged or suffered from a hostile work environment based upon age discrimination.

**CONCLUSION:**

For the reasons stated above, we will grant the defendants' motion for summary judgment. (Rec. Doc. No. 34).

<u>s/James F. McClure, Jr.</u>
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DIANE KERSTETTER          :
                          :
          Plaintiff,      :          4:08-CV-1984
     v.                   :
                          :          (Judge McClure)
PENNSYLVANIA DEPARTMENT    :
OF CORRECTIONS SCI-COAL    :
TOWNSHIP, JOSEPH PIAZZA,   :
THOMAS SPENCE, NANCY       :
WILSON and DAVE POPEK      :
                          :
          Defendants.     :

**ORDER**

March 12, 2010

For the reasons set forth in the accompanying memorandum,

**IT IS HEREBY ORDERED THAT:**

1.     Defendants' motion for summary judgment (Rec. Doc. No. 34) is

**GRANTED**.

2.     The clerk is directed to enter final judgment in favor of defendants

and against the plaintiff.

3.     The clerk is directed to close the case file.

                              s / James F. McClure, Jr.
                              James F. McClure, Jr.
                              United States District Judge